### J. S. SOLOMON *v.* FIRST NATIONAL BANK OF MERIDIAN.

1. BANK. *Dividends. Application to debts of stockholders. Surety.*

A resolution of the directors of a bank that a dividend declared shall be entered as a credit on any debt of a shareholder to the bank "whose indebtedness is not fully secured," does not authorize it to appropriate the dividend of a shareholder to a note on which he is surety, where, at the time the dividend was declared, the note was secured by collaterals which the bank afterwards, with the consent of the surety, surrendered, taking in lieu thereof a trust-deed on land of the principal debtor to secure the note and an additional debt, reciting in the trust-deed that the note was extended twelve months.

2. PRINCIPAL AND SURETY. *Change of securities. Extension. Waiver.*

The surety on a note secured by collaterals of the principal debtor, by merely consenting that the collaterals be surrendered and that a deed of trust be given by the principal debtor in lieu thereof to secure the note and another debt of the principal (the note being extended), does not waive his right to have the security first applied on the note in his exoneration.

FROM the chancery court of Lauderdale county.

HON. W. T. HOUSTON, Chancellor.

The case is fully stated in the opinion.

*Walker & Hall,* for appellant.

The right of Solomon to direct the application of his dividend cannot be questioned. *McLaughlan* v. *Green,* 48 Miss., 175; *Hiller* v. *Levy,* 66 *Ib.,* 30; *Wooten* v. *Buchanan,* 49 *Ib.,* 386; *Champenois* v. *Fort,* 45 *Ib.,* 355; *Crisler* v. *McCoy,* 33 *Ib.,* 445; *Dennis* v. *McLaurin,* 31 *Ib.,* 606. The fact that he directed the application is not denied. The bank relies on the resolution of its board of directors as authorizing an appropriation of the dividend to pay the $4,000 note. No resolution is necessary to authorize the bank to apply a dividend to the in-

debtedness of stockholders, but the bank could not, by any reso-
lution, destroy the right of the debtor to direct to what debt
the money should be applied.    However, the resolution itself
relates to the indebtedness of stockholders, and then only to
such indebtedness " as is not fully secured." This was Fewell's,
not Solomon's debt, and it was amply secured.

Solomon testified that he would not have signed the note but
for the collaterals by which it was secured.   The bank saw fit
to surrender these upon the application of Fewell, and Solomon
consented only upon condition that the bank should take a
mortgage on real estate in lieu thereof; but the bank, instead
of taking a mortgage in lieu of the surrendered stock, em-
braced therein another debt of Fewell, and afterwards took
the mortgaged property in payment of both debts, first, how-
ever, applying the dividend of Solomon as a credit on the note.
Thus Solomon has been deprived both of his money and the
security furnished by the principal debtor for his protection.
He is, therefore, discharged to the extent of any impairment
of his right.    Sheldon on Subrogation, §§ 120, 123, 128, 182;
*McMullin* v. *Hinkle*, 39 Miss., 142; *Anthony* v. *Capel*, 53
*Ib.*, 350; 19 S. E. Rep. (Va.), 654.

The mortgage was taken, so far as the note was concerned,
in lieu of the collaterals.    The additional indebtedness was un-
secured, and no agreement touching it was had with Solomon.
Under the circumstances, we submit the mortgage should be
held to operate, as to the additional indebtedness, subordinate to
the note, and Solomon, as surety on the note, should be held
entitled to have the proceeds appropriated first to the payment
of that note.    See *Stamps* v. *Brown*, Walker (Miss.), 526;
*Parker* v. *Mercer*, 6 How. (Miss.), 320; *Cage* v. *Iler*, 5 Smed.
& M., 410; *Wooten* v. *Buchanan*, 49 Miss., 386.

*Hamm, Witherspoon & Witherspoon*, for appellee.

It was undoubtedly the right of the bank, even if the res-
olution of the directors had been silent upon the subject, to

apply the dividend of Solomon to the note of Fewell on which he was surety. An effort was made to show that the note was amply secured, and therefore the resolution did not apply to it; but Fewell shows the note had been secured by stock of an electric company, but that it was not secured at the time the dividend was declared. It was then not secured at all. Subsequently, Fewell gave the bank a deed of trust on real estate to secure the note and an additional indebtedness, and afterwards conveyed to the bank the real estate in payment of such additional indebtedness and a balance due on the joint note. The proof shows the real estate was not worth as much as the amount of the debts. Solomon never offered to pay the debts and take security. It was shown that Fewell had been the attorney of Solomon, and that there was an open, unsettled account between them, and when the bank applied the dividend on the $4,000 note, Fewell told Solomon he would credit him for the amount on his account. See *Hendrick* v. *Lindsay*, 93 U. S., 143; *Bank* v. *Grand Lodge*, 98 *Ib.*, 123; Pollock on Contracts, 1991, note 4.

COOPER, C. J., delivered the opinion of the court.

The appellant, Solomon, is one of the joint makers of a note, with the appellee and Weems and Robinson, payable to the order of Haas, Guthman & Co., for the sum of $1,673.30. This note is dated August 16, 1892, and due four months after date. It was given for the purchase of furniture for the Southern Hotel, in which the interest of the respective parties was: the appellant, 33⅓ per cent.; the appellee, 25 per cent.; Weems, 40 per cent.; and Robinson, 1⅔ per cent. And, as between themselves, such was the proportion of the note each was to pay. When the note was given, each of the makers, except the bank, placed in the hands of one J. H. Wright securities to be held by him until the party depositing the same should pay his proportion of the note, when Wright was to deliver to him the security he had deposited. Soon after the execution

of the note, the bank purchased it from Haas, Guthman & Co., and Weems and Robinson paid, at maturity, their respective portions thereof. The bank exhibited its bill, in this cause, against all the parties, including Wright, seeking to recover from Weems, Robinson and Solomon the amount remaining unpaid on said note, and to subject to the payment thereof the securities deposited with Wright by Solomon. Solomon demurred to the bill, and, that being overruled, answered, and made his answer a cross bill. By his cross bill, he avers that he was, in June, 1892, the owner of ninety-three shares in the capital stock of the complainant, of the par value of $100 each, and that in that month a dividend of 10 per cent. was declared, amounting to $930, on the stock owned by him; that he directed the bank to apply a sufficient sum thereof to the payment of his part of the debt evidenced by the note here sued on, and to pass the remainder to his credit on the books of the bank; that the bank has never so applied said dividends nor accounted to him therefor. The prayer of the cross bill is that an account of such dividends may be taken, and a sufficiency thereof to pay his part of the note sued on may be applied thereto, and that, for the balance remaining due he may have a decree over against the bank. To this cross bill the bank answered, admitting that Solomon was, in June, 1892, the owner of eighty-three shares of its capital stock, but denied that he owned ninety-three shares; that a dividend of 10 per cent. on this stock was declared, amounting to the sum of $830. In reference to this dividend, the bank responded to the cross bill, saying: "This respondent admits that it has not paid to said Solomon any part of said $830 dividend, but it shows and states that in 1892, when said dividend was declared, the said Solomon and John W. Fewell were indebted to this respondent in the sum of $4,000, evidenced by their promissory note, and that, at the time said dividend was declared, and by the resolution declaring said dividend, it was decided and agreed among the directors of this respondent that the dividend due each stockholder, under said resolution, should

be appropriated as a payment on whatever indebtedness each stockholder might then owe this respondent; that the said Solomon was then a member of said board of directors, and was present and participated, as such director, in said meeting and in the passage of said resolution; and that, in accordance with said resolution, this respondent appropriated said Solomon's dividend of $830 as a payment upon said note of $4,000 due by said Solomon and said Fewell, and that the balance of said $4,000 note has been paid by said Fewell and said note surrendered to said Fewell. And this respondent is informed and believes, and so charges, that the said Solomon is indebted to said Fewell, and that said Fewell is willing and ready to credit Solomon's indebtedness to him with the amount of said dividend of $830."

The resolution of the board of directors declaring the dividend referred to in the pleadings provides that: "The dividend this day declared shall not be paid to any shareholders who may be indebted to the bank and whose indebtedness is not fully secured, but the amount of the dividend to such shareholders shall be entered as a credit on their indebtedness, and that to the shareholders who are not indebted to the bank, certificates of deposit shall be issued bearing interest at the rate of four per cent. per annum from July 1, and payable on January 1, 1893, or before said date, at the option of the bank, said dividend to be paid in above manner on and after July 1." At the time this dividend was declared Solomon was not indebted to the bank in any other sum than that evidenced by the note of $4,000 executed to the bank by Fewell and Solomon, Solomon being surety thereon for Fewell. This note was dated September 29, 1891, and was due ninety days after date. It was given in renewal of another for a like sum previously executed by the same parties, and the evidence suggests that there had been one or more antecedent renewal notes. What security the bank had for this note when the dividend was declared the evidence does not make clear. When the original note was given Fewell had deposited with the

bank, as security, some stock of the Thompson-Houston Electric Light Company. Robinson, the cashier of the bank, says that this stock was delivered up to Fewell under an agreement with Solomon that Fewell should substitute for it a deed of trust upon certain lands, which was done. This deed of trust appears in the record and bears date July 6, 1892. Fewell says the stock was redelivered to him some time before this. The bank, however, does not pretend that this note was not in some way secured on July 1. However this may be, no appropriation of the dividends due to Solomon by the bank had been made on July 6, 1892, for on that day Fewell executed a deed of trust to the bank in which the note is described as being due, both principal of $4,000 and accrued interest, and by the deed which was accepted by the bank, the time for its payment was extended for twelve months from the date of the deed. At the time this deed of trust was given, Fewell was further indebted to the bank in the sum of $4,200 and interest thereon from December, 1891, evidenced by his individual note, and for which the bank had no security. Both these notes were secured by the deed of trust of July 6, 1892. Robinson, the cashier of the bank, says that: "When Captain Fewell applied to me for a surrender of the stock I went to Mr. Solomon and told him what Captain Fewell wished, and what security he offered in lieu of the stock. After talking that over for some little time, Mr. Solomon agreed that the bank might release the stock to Captain Fewell." On re-examination, this witness stated that Solomon knew of the existence of the unsecured note of Fewell held by the bank and agreed that the deed of trust should be taken as security for both notes. "At that time it was thought by all of us that the property was worth a great deal more than the sum of the two notes."

The original bill in this cause was filed on July 20, 1893. On the thirtieth day of December, 1893, the bank accepted a conveyance from Fewell of the property described in the deed of trust in payment and discharge of the indebtedness it then

secured, having at that time, or at some antecedent time, applied the dividends of Solomon ($830) as a credit on the note on which he was surety for Fewell. The cross bill of Solomon was filed June 18, 1894. Upon the subject of appropriating the dividends, Solomon testified that he directed the officers of the bank to apply a sufficiency thereof to pay the note sued on by the complainant, and to place the remainder to his credit. Robinson denies that he directed the dividends to be applied to the payment of this note, but admits that he objected to their being credited on the Fewell note.

On final hearing, the chancellor granted full relief to the complainant and dismissed the cross bill of Solomon.

We think it clear, from the bank's own showing, that the relief prayed by Solomon by his cross bill should have been granted, and this on either of two grounds:

1. When the dividend was declared, the sum thereby set apart to Solomon was his property, since he owed no debt to the bank except the one evidenced by the note of Fewell on which he was surety, and that was fully secured. The resolution of the board of directors was, therefore, not a limitation upon his right to the dividend, for his debt was not of the class which, in the declaration of the dividend, it was provided should be paid by an appropriation of the dividends. As soon as the dividend was declared and set apart, it became his property, and he might, at the expiration of the period fixed for its payment, have maintained an action therefor. Cook on Stock & Stockholders, §§ 541, 542. Whether a bank has a lien on the dividends to secure the payment of a debt due it by the stockholder in any other sense than as a set-off, is not involved in this cause. The action of the corporate officers in attempting to appropriate the dividends to a debt fully secured, was in direct opposition to the resolution of the directors, and was an unauthorized denial of a right recognized by the controlling authorities of the bank.

No debt was due by Solomon to the bank after July 6, 1892,

and prior to July 6, 1893, to which the dividends could be applied, for by the deed of trust executed by Fewell on that day and accepted 'by the bank, the payment of the note was postponed for one year.   No point is made by Solomon that he was released as surety because of this extension, and we assume it was granted by his consent; but its effect was to tie up the right of the bank to demand payment of the note until the expiration of the period of extension, and there could have been no application of the dividend, which was a debt due by the bank to Solomon, to the payment of a note not matured.

2. The bank was always amply secured by the property of Fewell, the principal debtor, and to this property Solomon had the right to compel it to resort, in exoneration of his liability as surety.   This property, primarily chargeable with the payment of the note upon which he was bound, has, pending this litigation, been accepted by the bank at a valuation far above the sum necessary for the full payment of the note on which he was surety, but the credit arising therefrom has been diverted and applied to the payment of a debt due by Fewell, and for which the bank had no security before the deed of trust was executed.   This deed was given in substitution of the stock originally held by the bank for the protection of Solomon as surety.   The evidence does not show that he agreed to subordinate his claim against this property, or to admit the bank to participate therein for the security of its unsecured debt with which he had no connection and for which he was not bound.   The property was supposed to be sufficient to secure both notes, and he consented that both might be inserted in the deed and secured thereby, but, under the circumstances of this case, it is not reasonable to infer that he intended to waive his priority of right to the security it afforded, and there is no evidence tending to show that the bank officers so understood the transaction.   The decree dismissing the cross bill is reversed, and a decree will be entered here granting relief according to its prayer.                    *Reversed, and decree here.*